[No. 9204.  Department Two.  March 23, 1911.]

GEO. M. McDONALD & COMPANY, *Appellant*, v. GEORGE R. JOHNS *et al.*, *Respondents.*[1]

MORTGAGES—PRIORITY—RECORD—BONA FIDE PURCHASERS — PREEXISTING DEBT.  As between real estate mortgages given as security for preexisting debts, the one first executed and delivered takes priority, although the other was first recorded; a mortgagee for a preexisting debt not being a *bona fide* purchaser, within Rem. & Bal. Code, § 8781, providing that a recorded mortgage shall be valid as against *bona fide* purchasers from the date of recording.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered March 7, 1910, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage. Affirmed.

*C. C. Bryant*, for appellant.

*Sam B. Hill* and *John W. Hanna*, for respondents.

DUNBAR, C. J.—Incorporated in the record in this case is a very lucid and forceful opinion rendered by the trial judge, and a very succinct statement of the facts, which we will adopt, there being no question raised as to the facts found by the court. Johns and wife, whom we will hereafter refer to as Johns, were indebted to appellant in the principal sum of $2,210, evidenced by three promissory notes, all executed and delivered at times prior to May 5. 1908. On May 5, 1908, Johns executed and delivered to appellant a mortgage on certain lands specified. Johns was also at the same time indebted

[1]Reported in 114 Pac. 175.

to Bechtol, one of the respondents, in the sum of $662.16, evidenced by a promissory note executed and delivered at a time prior to May 4, 1908. On May 4, 1908, Johns executed and delivered to Bechtol a mortgage on the same lands which had been mortgaged to appellant, and above described. Both mortgages were given to secure the payment of a preexisting indebtedness, and no new or additional consideration or extension of time of payment was given as an inducement to the execution of either of said mortgages. The Bechtol mortgage was executed and delivered first. The McDonald mortgage was recorded first. Quoting from the opinion of the court:

"Upon these facts the ultimate question is: which of these mortgages has the prior lien on the land in said sections 25 and 30? McDonald claims to be a 'bona fide purchaser' (incumbrancer) without notice of the Bechtol mortgage prior to the execution and delivery of his own. I will assume (without finding or deciding at this time) that he had no notice. The law upon which his claim to priority must rest is found at § 4441, Pierce's Code [Rem. & Bal. Code, § 8781] and reads: 'All deeds, mortgages and assignments of mortgages shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against bona fide purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world.' Of course, the term 'bona fide purchaser' means bona fide mortgagee or incumbrancer, as well; else the statute would have no application to mortgages at all. Hence, the statutory phrase will be used in that sense herein. This statute is for the protection of those who become bona fide purchasers *subsequent* to a given conveyance or mortgage, and has nothing to do with those who become such *prior* thereto. In other words, the recording act reaches forward with its benefits, and not backward. It imposes upon any given mortgagee the duty of making a public record of his mortgage for the information, guidance and protection of those who at a *subsequent* time may have occasion to deal concerning the land, failing in the discharge of which duty he shall lose the priority otherwise to be accorded to him. But a mortgagee owes no such duty to those who *precede* him, and as against them he neither gains nor loses anything by

recording his mortgage (except in those states where the statutes expressly provide otherwise)."

In the opinion of the learned judge there are collated and distinguished the principal cases on this subject, and the court concluded, as indicated, that the priority should be accorded to the party having received the first mortgage, and judgment was entered accordingly.

A review of the authorities convinces us that the judgment in this case should be affirmed. The doctrine of mortgages was originally, of course, purely equitable, and is yet as between the mortgagor and the mortgagee; and as between them it makes no difference whether the mortgage is recorded or not. The recording statutes were for the purpose, as is universally understood now, of giving constructive notice to innocent purchasers and incumbrancers, and the practical question in all these cases is, who are innocent purchasers and incumbrancers. Pomeroy, in the second volume of his Equity Jurisprudence (3d ed.), § 749, says:

"A conveyance of real or personal property as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before. The rule has been settled, therefore, in very many of the states, that such a transfer is not made upon a valuable consideration, within the meaning of the doctrine of *bona fide* purchase;"

citing cases from Alabama, Arkansas, New York, Vermont, Massachusetts, New Jersey, Pennsylvania, Kentucky, Illinois, Mississippi, Tennessee, Texas, and Indiana, to sustain the text. It is also stated by the author that the doctrine is not universal, but that the weight of authority is in accordance with the text announced. It is also said, in discussing the question, at § 747:

"What constitutes a valuable consideration within the meaning of the doctrine which gives protection to a bona fide purchaser? No person who has acquired title as a mere volunteer, whether by gift, devise, inheritance, post-nuptial settle-

ment on wife or child, or otherwise, can thereby be a bona fide purchaser. Valuable consideration means, and necessarily requires under every form and kind of purchase, something of actual value, capable, in estimation of the law, of pecuniary measurement,—parting with money or money's worth, or an actual change of the purchaser's legal position for the worse."

And ordinary examples are given, as a contemporaneous advance or loan of money, or a sale, transfer, or exchange of property, made at the time of the purchase or execution of the instrument; the surrender or relinquishment of an existing legal right, or the assumption of a new legal obligation which is in its nature irrevocable. Jones, on Mortgages, vol. 1 (6th ed.), p. 433, also states that the weight of authority is to the effect that the equitable mortgage, the mortgage first given, will prevail over the subsequent mortgage recorded prior to it. In *People's Sav. Bank v. Bates*, 120 U. S. 556, a case which cannot be distinguished in principle from the case at bar, it was held that the doctrine that the *bona fide* holder for value of negotiable paper, transferred as security for an antecedent debt merely, and without other circumstances, is unaffected by equities or defenses between prior parties of which he had no notice, does not apply to instruments conveying real or personal property as security in consideration only of preexisting indebtedness; the court quoting from 2 American Leading Cases (5th Am. ed.), p. 233, where it is said:

"Whatever the rule may be in the case of negotiable instruments, it is well settled that the conveyance of lands or chattels as security for an antecedent debt will not operate as a purchase for value, or defeat existing equities."

"A creditor who takes a mortgage on realty merely as security for the payment of a debt or demand already due to him, and without giving any new consideration or being induced to change his condition in any manner, is not entitled to the protection accorded to a *bona fide* purchaser for value, as against prior liens or equities." 27 Cyc. 1191;

See, also, 24 Am. & Eng. Ency. Law (2d ed.), 139.

Outside of general authority, this view of the law has been distinctly sustained by this court in *Hicks v. National Surety Co.*, 50 Wash. 16, 96 Pac. 515. That was where a surety company took a bill of sale as security for a preexisting debt upon a breached contractor's bond where a prior unrecorded bill of sale had been given, and it was held that the surety company was not an incumbrancer for value in good faith, and that its lien was inferior to that of a prior bill of sale valid as between the parties, although not executed so as to be valid as to creditors of the vendor or subsequent incumbrancers in good faith. The court concluded its announcement in that case by saying:

"The instrument under which the appellant claims was taken as security for a preexisting debt or preexisting contingent liability. Under such circumstances does it come within the definition of an incumbrancer for value and in good faith, as that term is defined in law? Under the great weight of authority it does not."

And the first case cited was *People's Sav. Bank v. Bates*, *supra*.

The judgment is affirmed.

CROW, CHADWICK, and MORRIS, JJ., concur.