[No. 1081-2.    Division Two.    July 17, 1974.]

Monte C. Matthews, Sr., *Respondent*, v. Herbert E. Richmond, *Appellant*.

*Clarence H. Fidler,* for appellant.

*Howard V. Doherty,* for respondent.

Pearson, C.J.—This case concerns an action in personam by a conditional seller of a numbered[1] fishing vessel against a maritime lienor whose interest in the boat had been executed in a prior in rem admiralty proceeding in United States District Court. The trial court awarded the plaintiff the amount of the unpaid balance on the boat, on a theory of estoppel. We affirm.

---

[1] A "numbered" vessel is one that has been registered with the United States Coast Guard and assigned a number.

The plaintiff, Monte C. Matthews, sold a numbered fishing boat to one Clark in May of 1969. He perfected a security interest in the vessel under the terms of the Uniform Commercial Code, to secure an unpaid balance of approximately $2,600.

Thereafter, Matthews introduced Clark to the defendant Herbert E. Richmond, a marine supplier. The parties discussed the outfitting of the vessel for fishing purposes. During this discussion, the defendant was made aware of the plaintiff's status as conditional vendor of the boat, and that a secured balance remained due thereon from Clark. Defendant subsequently supplied equipment to Clark for the boat, on a credit basis.

Within a few months, Clark abandoned the boat, and defaulted on his obligations to both parties. The plaintiff located the boat and towed it to the defendant's Clallam County moorage, where it was stored and watched over by both parties.

On September 18, 1969, Richmond filed a libel in rem against the boat in United States District Court for the Western District of Washington, seeking arrest of the vessel and execution of his maritime lien for supplies provided to the boat. The United States Marshal subsequently arrested the vessel, posting notice of that action on the boat at the Clallam County moorage.

When he became aware of the vessel's arrest, the plaintiff contacted Richmond to discuss their mutual rights with respect to the boat. The evidence adduced on this point at trial led the trial court to enter the following finding of fact:

> That following the supplying of material and equipment to the vessel by the defendant Richmond and particularly during the advertising and pending of sale under the Richmond maritime lien, the parties discussed their respective rights and claims, the defendant Richmond reassuring the plaintiff that plaintiff's balance owing him by Clark, then in the amount of $2,221.00, would be first paid from sale of the vessel. That the plaintiff relied on such assurances, taking no further action nor making any

further protest other than filing his third-party claim in such maritime proceedings.

Finding of fact 4.

The vessel was thereafter sold pursuant to order of the United States District Court. The defendant purchased the boat, bidding $2,200, the amount of his in rem judgment, plus costs. The plaintiff, while present at the sale, took no action, in reliance upon the defendant's assertions. The defendant subsequently sold the vessel for approximately $3,700. After a period of time, with no money forthcoming from the defendant, plaintiff brought this lawsuit, basing his claim upon the understanding between the parties that his interest would be given priority. Based upon these facts, the trial court granted plaintiff judgment for the amount of his interest.

■ We first dispose of defendant's contention that the action of the plaintiff constitutes a collateral attack upon the judgment of the federal court. The essence of plaintiff's action was a theory of estoppel, based upon the defendant's promise to honor his claim which induced the plaintiff to forbear from asserting that claim in the admiralty proceeding. It is unquestionable that the federal in rem decree had the effect of stripping the vessel of all liens, and that such decree is binding as against all. *See generally* G. Gilmore and C. Black, *The Law of Admiralty* § 9-2, *et seq.* (1957); *see also Pasternack v. Lubetich*, 11 Wn. App. 265, 267-68, 522 P.2d 867 (1974); 1 E. Benedict, *The American Law of Admiralty* § 11 (6th ed. A. Knauth 1940). Thus the plaintiff lost any lien he may have had in the vessel, or any right to proceed in rem in admiralty. As to him, the decree had no further effect; it did not alter any personal liabilities which might subsist between the parties as a result of their mutual actions and undertakings. See authorities cited *supra*.

Moreover, the plaintiff's position is that the actions of the defendant estop him from asserting the admiralty decree as a bar, or denying the priority of a claim which he previously acknowledged. In our view, the unchallenged findings of the trial court support this position.

■ The elements of equitable estoppel, or estoppel in pais have been frequently set forth in the cases. They consist of: (1) an admission, statement, or act inconsistent with a claim otherwise asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Arnold v. Melani*, 75 Wn.2d 143, 437 P.2d 908 (1968); *Kessinger v. Anderson*, 31 Wn.2d 157, 196 P.2d 289 (1948).

Finding of fact 4, set forth verbatim above, clearly supplies the first two elements of the doctrine. The fundamental issue in the case is thus the question of detriment, *i.e.*, did plaintiff, by relying upon the assurances of defendant, forgo any rights which he may have otherwise successfully asserted in the admiralty proceeding? The answer to this question requires a brief examination of maritime lien law.

■ Under that law plaintiff's perfection of a security interest in the vessel, while sufficient under RCW 62A, article 9, did not, by itself, establish his priority over a subsequent maritime lienor. As said in *The Gold Digger, James Tregarthen & Sons Co. v. Forsythe Bros.*, 44 F.2d 660 (E.D.N.Y. 1930), *aff'd*, 49 F.2d 1078 (2d Cir. 1931), with respect to similar perfection under state law:

> The filing of the conditional bill of sale in the county clerk's office, in accordance with the New York state statute, did not constitute constructive notice so as to defeat a lien in favor of a repair man.

*See also Tivoli Radio & Marine Co. Inc. v. Vessel the Ral*, 215 F. Supp. 643 (E.D.N.Y. 1963).

■ However, in *The Gold Digger*, the court placed emphasis upon the lack of actual notice to the marine repairman of the preexisting vendor's interest. In the instant case, the defendant had actual notice of the conditional nature of the sale from plaintiff to Clark. Moreover, a maritime lienor may waive his lien, particularly where he evidences an intent not to insist on the lien or its priority. G. Gilmore and C. Black, *The Law of Admiralty* §§ 9-38, 9-84 (1957).

In our opinion, finding of fact 4 evidences a clear intention upon the part of the defendant to agree to first honor the plaintiff's interest, and to acknowledge its priority over his maritime lien. Accordingly, in view of the above authorities, it is our opinion that plaintiff would have had, based upon these facts, a colorable claim to priority in the admiralty proceeding. It thus follows that injury would result to the plaintiff were defendant permitted to repudiate his earlier assurances.

The unchallenged findings of the trial court thus support the judgment on the basis of equitable estoppel.

Affirmed.

ARMSTRONG and PETRIE, JJ., concur.